FILED

MAR   9 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

| | |
|---|---|
| In re | Case No. 09-90802-E-7 |
| MANUEL L. MONIZ, III and TAMMI S. MONIZ, | |
| Debtor(s). | |
| VAN DE POL ENTERPRISES, INC., | Adv. Pro. No. 09-9056 |
| Plaintiff(s), | |
| v. | |
| MANUEL L. MONIZ, III and TAMMI S. MONIZ, | |
| Defendant(s). | |

**SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**February 16, 2011 Ruling on the Record**

On February 16, 2011, the court announced its findings of fact and conclusions of law on the record in Adversary Proceeding 09-09056, *Van de Pol Enterprises, Inc. v. Tammy Moniz and Manuel Moniz*, pursuant to Rule 52, Federal Rules of Civil Procedure, and Rule 7052, Federal Rules of Bankruptcy Procedure. The court issues these Supplemental Findings of Fact and Conclusions of Law to provide a clear record for counsel in the post-judgment environment.

## Determination of Insolvency

In the court's ruling, the determination has been made that Moniz, Inc. was insolvent as of July 30, 2008, and thereafter. The determination was made based on the testimony of Scott MacEwan and the balance sheets and financial statements of Moniz, Inc. (Exhibit 11), the testimony of Steven Becker, and the corporate records showing that Moniz, Inc. ceased operations on or about July 8, 2008 (Exhibit 10 and the testimony of Tammy Moniz). The court determined that the assets of the company were $1,128,325.91, while the liabilities were $1,547,717.26. These numbers are consistent with those argued by Tammy Moniz and Manuel Moniz at the trial and the testimony of both Scott MacEwan and Steven Becker, as well as the Moniz, Inc. balance sheet for August 2008 (Exhibit 11). The insolvency shown on the balance sheets increases dramatically to ($850,003.25) in September 2008 and ($1,204,570.72) in October 2008.

Steven Becker testified that the balance sheets did not reflect the true value for the assets of the business, in large part because the Moniz, Inc. customer list was not included in the assets. Mr. Becker assigned a value of $1,327,930.00 for the customer list. The court did not find Mr. Becker's testimony to be of assistance, as an expert, or persuasive. No methodology was given for this valuation. Further, no testimony was provided as to why, if a $1,327,930.00 asset existed post July 30, 2008, that asset was not liquidated for the benefit of creditors, Tammy Moniz, and Manuel Moniz. Testimony was given that other assets of Moniz, Inc. were sold, though no specifics of those sales were provided. Also, no testimony was provided as to what value was obtained for

1  these assets or the specific assets sold.

2      Mr. Becker also provided testimony that he used the standard

3  valuation methods of the sales comparison, cost, and income

4  capitalization.  He opined that the income capitalization method

5  was the most appropriate.  The sales comparison was not used

6  because he did not have comparable sales.  Moniz, Inc. was a

7  closely-held company, and closely-held companies do not make their

8  financial information public.  For the cost valuation method,

9  Mr. Becker determined that Moniz, Inc. had a value of $808,000.00,

10  but that this only took into place recreating the physical

11  business.  Since Moniz, Inc. was a distribution company with a

12  relatively small infrastructure requirement, he believed that this

13  did not reflect the value of the business.

14      Under the income capitalization method, Mr. Becker concluded

15  that the company would have a value of $1,885,580.00.  To this he

16  added an additional $1,327,930.00 for the value of the customer

17  list.  In coming to this conclusion, Mr. Becker did not provide a

18  persuasive explanation as to how a customer list, which was

19  necessary to generate the income upon which he based his income

20  approach, would have a separate value above the income it

21  generated.  The court determines that the value of the customer

22  list in this case, if any, is included in the value of the business

23  under an income capitalization approach.

24      Further, the court does not find persuasive Mr. Becker's

25  testimony that the income capitalization approach is the proper

26  method for valuing Moniz, Inc. after July 30, 2008, when operations

27  had ceased.  Tammy Moniz testified that she and Manuel Moniz had

28  attempted to sell the business, including efforts to sell it to Van

3

1   de Pol Enterprises, Inc.   Their efforts to sell the business had

2   been rejected.  By July 30, 2008, the company had ceased operations

3   and was generating no income.   It was being sued and Van de Pol

4   Enterprises, Inc. had obtained a writ of attachment on the Moniz,

5   Inc. accounts receivable.  As Tammy Moniz testified, after July 30,

6   2008, the assets of Moniz, Inc. continued to decline because it was

7   not operating and not generating any new accounts receivable.  The

8   court  is  not  persuaded  that  using  an  income  capitalization

9   valuation method is the most appropriate, and would produce an

10  accurate result, for valuing a company which ceased operations, was

11  liquidating its assets, and could not be sold.

12        In addition to proposing separate values for the client list,

13  Mr. Becker also believes that the value of fuel tanks which Moniz,

14  Inc. owned and placed on customers' properties had a value greater

15  than that stated on the balance sheets.   His basis for coming to

16  this conclusion was information provided to him by Manuel Moniz.

17  Mr.  Becker  did  not  present  any  information  concerning  his

18  investigation into the tanks, valuation of the tanks, or what the

19  tanks actually were sold for by Moniz, Inc. in the Fall of 2008.

20  Testimony was provided that not all of the tanks were sold by

21  Moniz, Inc., and that the remaining tanks had not been sold by the

22  Moniz, Inc. Chapter 7 trustee.   The court cannot ascribe any

23  additional value to the tanks above what Moniz, Inc. (presumably)

24  correctly stated on its balance sheet.  Merely because Mr. Becker

25  is an expert witness, he cannot re-communicate hearsay information

26  from Manuel Moniz and transform it into non-hearsay testimony.  The

27  court does not find persuasive the information and opinion by Mr.

28  Becker that the value of the tanks should be increased.

4

1  Additionally, Mr. Becker's Forensic Business Fair Market

2  Valuation, attached to his direct testimony statement is that the

3  list/book of business valuation for Moniz, Inc. is between

4  $1,300,000.00 to $1,350,000.00. If the court were inclined to just

5  adopt his valuation opinion, which it is not, then Moniz, Inc. is

6  still insolvent.

7      **Computation of Van de Pol Enterprises, Inc.'s Interest**
       **as Beneficiary of Trust For Determining Judgment Amount**

8

9  As announced on the record, the court determined that in the

10  Summer and Fall of 2008, Moniz, Inc. was insolvent and the

11  officers, directors, and shareholders, Tammy Moniz and Manuel

12  Moniz, knew that the company was out of business and was being sued

13  by Van de Pol Enterprises.  With knowledge of the insolvency and

14  pending litigation, Tammy Moniz and Manuel Moniz disbursed

15  $352,887.22 to themselves after July 20, 2008, from the trust for

16  creditors created by the insolvency of Moniz, Inc.  The Defendants

17  contend that the maximum monetary judgment for Van de Pol

18  Enterprises, Inc. under an insolvent corporation trust fund

19  doctrine for the monies improperly taken by the officers,

20  directors, and shareholders of the corporation is limited to the

21  percentage of the monies taken that is equal to the percentage of

22  the Van de Pol Enterprises, Inc. claim of the total claims of

23  creditors against Moniz, Inc.

24  As stated in its findings on the record, using the information

25  from the Trustee's final report in the Moniz, Inc. bankruptcy case,

26  Docket Entry No. 129 in Case No. 08-92125, Moniz, Inc. creditors

27  have $1,300,088.69 in unsecured claims (priority and general

28  unsecured claims), of which $734,978.22 is the Van de Pol

5

1  Enterprises, Inc. claim.  The Defendants argue that any judgment

2  for Van de Pol Enterprises, Inc. is limited to $199,487.16 (56.53%

3  of $352,887.25).   In support of this argument, the Defendants

4  direct the court to *Oney v. Weinberg*, 410 B.R. 19 (9th Cir. BAP

5  2009).   On page 34 and in footnote 11, the Bankruptcy Appellate

6  Panel comments that the trial court allowed only the creditor's

7  proportionate share of the funds transferred, not its entire claim

8  up to the amount of the transferred funds under Arizona law.

9       The Bankruptcy Appellate Panel addressed the issue of the

10 trust fund doctrine in *Nahman v. Jacks*, 266 B.R. 728 (9th Cir. BAP

11 2001), concluding that California courts have recognized that all

12 assets of a corporation, immediately upon becoming insolvent,

13 become a trust fund for the benefit of creditors, citing to *Saracco*

14 *Tank & Welding Co. Ltd. v. Platz*, 65 Cal. App.2d 306 (1944).   More

15 recently, the District Court of Appeal reaffirmed the trust fund

16 doctrine in California and that actions of the officers and

17 directors that divert or dissipate assets that might otherwise be

18 used to pay creditor claims may be avoided.   *Berg & Berg*

19 *Enterprises, LLC v. Boyle*, 178 Cal.App. 4th 1020, 1041 (2009).

20 This precludes the officers and directors from diverting the assets

21 to entities in which they have an interest or themselves.   *Id.*, pg.

22 1040.

23      The Bankruptcy Appellate Panel in *Jacks* and the District Court

24 of Appeal in *Berg* cite to the seminal United States Supreme Court

25 case, *Pepper v. Litton*, 308 U.S. 295, 306-307 (1939).   In *Pepper*,

26 the Supreme Court stated that a claim of an officer, director, or

27 stockholder in a bankruptcy proceeding could be subordinated to

28 other creditor claims if the officer, director, or controlling

6

1  shareholder breached his or her fiduciary duty.  The officer,

2  director, or shareholder is not allowed to participate in the

3  assets of the corporation, even for bona fide debt if there has

4  been a breach of that person's fiduciary duty.  This principle

5  recognizes that a wrongdoing fiduciary is not allowed to partake in

6  the assets of the trust.

7       Neither party has addressed for the court the proper method

8  for computing the interests of beneficiaries in an insolvent

9  corporation trust when the wrongdoer officers, directors, and

10 shareholders file bankruptcy and obtain a discharge that alters the

11 rights of some of the creditors holding beneficial interests in the

12 trust.  Upon considering the issue, the court does not concur with

13 the Defendants that the discharge in bankruptcy works to

14 effectively transfer the beneficial interests of creditors to the

15 wrongdoer officers, directors, and shareholders and that such

16 wrongdoers effectively share in the recovery of the monies which

17 they improperly disbursed by retaining the percentage interests of

18 the creditors' discharged claims.

19      Under the insolvent corporation trust fund doctrine, when a

20 corporation is insolvent, the corporate assets are held in trust

21 for the benefit of creditors. *Jacks, supra*, 266 B.R. at 737.  The

22 officers, directors, and shareholder (Tammy Moniz and Manuel Moniz

23 in this case) are the trustees of the trust.  Under California

24 trust law, a trustee has a duty not to use or deal with trust

25 property for the trustee's own profit or for any other purpose

26 unconnected with the trust. 13 WITKIN SUMMARY CALIFORNIA LAW, 10TH EDITION,

27 TRUSTS § 66.  A trustee has a duty to administer the trust solely

28 in the interests of the beneficiaries. 13 WITKIN SUMMARY CALIFORNIA LAW,

7

10ᵀᴴ EDITION, TRUSTS § 64. *See* California Probate Code § 16002. The beneficiary of a trust has the right to recover wrongfully disposed trust property, as well as suing the trustee personally. 13 WITKIN SUMMARY CALIFORNIA LAW, 10ᵀᴴ EDITION, TRUSTS § 129. The trustee does not have the right or power to take trust assets away from the beneficiaries.

Tammy Moniz and Manuel Moniz commenced a voluntary Chapter 13 case, which was converted to a Chapter 7 liquidation. In the Chapter 7 case, only one creditor asserted that it has rights as a trust beneficiary against Tammy Moniz and Manuel Moniz, that being Van de Pol Enterprises, Inc. Tammy Moniz and Manuel Moniz obtained their discharge in the Chapter 7 case on June 3, 2010. The effect of this discharge is that any of the other creditors who could have asserted claims against Tammy Moniz and Manuel Moniz are permanently enjoined by the statutory discharge injunction imposed by 11 U.S.C. § 524. For whatever reason, these other holders of beneficial interests in the trust have elected to allow their interests in the monies taken by Tammy Moniz and Manuel Moniz to lapse.

The court has considered the effect of holders of a beneficial interest in a trust waiving their interests, and upon such a waiver occurring, who has the right to the monies relating to those interests. The court concludes that it is only the beneficiaries who have enforceable rights and interests who are entitled to recover the diverted trust assets. The wrongdoing trustees do not acquire a right to retain the trust assets which were diverted. This is consistent with the purpose underlying the doctrine creating a trust for the benefit of creditors upon the insolvency

8

1  of a corporation – payment of the corporate assets to creditors and

2  not have it diverted by the officers, directors, and shareholders

3  to their own benefit.   This is also consistent with the purpose

4  underlying bankruptcy and the discharge granted to debtors, and the

5  long standing principle stated in *Pepper v. Litton, supra*.

6      In *Cohen v. De La Cruz*, 523 U.S. 213, 222-223 (1998), Justice

7  O'Conner  writing  for  a  unanimous  Supreme  Court  addressing

8  nondischargeability  of  a  debt  states  the  general  policy  for

9  exceptions  to  discharge  is  that  the  creditor's  interest  in

10  recovering full payment outweighs the debtor's interest in a fresh

11  start.   In its earlier decision, *Grogan v. Garner*, 498 U.S. 279,

12  286-287 (1991), the Supreme Court unambiguously stated the basic

13  underpinning  of  the  debtor's  discharge  and  the  Congressional

14  purpose underlying creating exceptions to discharge.

15      This Court has certainly acknowledged that a central
        purpose of the Code is to provide a procedure by which
16      certain insolvent debtors can reorder their affairs, make
        peace with their creditors, and enjoy "a new opportunity
17      in life and a clear field for future effort, unhampered
        by the pressure and discouragement of preexisting debt."
18      *Local Loan Co. v. Hunt, 292 U.S. 234, 244, 78 L. Ed.
        1230, 54 S. Ct. 695 (1934).* But in the same breath that
19      we have invoked this "fresh start" policy, we have been
        careful to explain that the Act limits the opportunity
20      for  a  completely  unencumbered  new  beginning  to  the
        "honest but unfortunate debtor." *Ibid*.

21
        The statutory provisions governing nondischargeability
22      reflect a congressional decision to exclude from the
        general policy of discharge certain categories of debts
23      -- such as child support, alimony, and certain unpaid
        educational loans and taxes, as well as liabilities for
24      fraud. Congress evidently concluded that the creditors'
        interest in recovering full payment of debts in these
25      categories outweighed the debtors' interest in a complete
        fresh start. We think it unlikely that Congress, in
26      fashioning  the  standard  of  proof  that  governs  the
        applicability of these provisions, would have favored the
27      interest in giving perpetrators of fraud a fresh start
        over  the  interest  in  protecting  victims  of  fraud.
28      Requiring the creditor to establish by a preponderance of

9

1  the evidence that his claim is not dischargeable reflects
   a fair balance between these conflicting interests.
2

3       This general policy that a wrongdoer debtor is not to profit

4  from his discharge was also addressed by the Ninth Circuit Court of

5  Appeals in *Boyajian v. New Falls Corporation*, 564 F.3d 1088 (9th

6  Cir. 2009).   In *Boyajian* the plaintiff was the assignee of a state

7  court judgment for breach of contract.   The assignee asserted that

8  the judgment was nondischargeable because the debtor had provided

9  fraudulent financial statements to induce the original creditor to

10 enter into the contract, and the debt arising from the contract was

11 nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).   The debtor

12 argued that the debt was dischargeable because the alleged fraud

13 had not been made to the assignee plaintiff, and the debtor was

14 insulated from nondischargeabilty of the debt.

15      The Bankruptcy Code "limits the opportunity for a
        completely unencumbered new beginning to the honest but
16      unfortunate debtor." *Grogan v. Garner, 498 U.S. 279, 286-
        87, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)* (quotation
17      marks omitted). While the bankruptcy court in this case
        held in favor of the Boyajians, it noted the perversity
18      of permitting dishonest debtors to receive a discharge
        through the fortuity that their creditor chose to assign
19      the debt. Moreover, if assignment of such a debt were to
        obviate a future non-dischargeability action in all cases
20      where the assignee did not itself rely on misleading
        financial statements, the functioning of modern debt
21      markets would be unnecessarily disrupted. There is no
        reason to construe *§ 523(a)(2)(B)(iii)* to require such an
22      outcome.

23 *Id.*, pg 1092-1093.   The Ninth Circuit Court of Appeals ruled that

24 the assignee of a claim could assert the nondischargeable basis of

25 the claim, and the debtor would not receive a windfall by virtue of

26 the decision by the original creditor to sell the judgment.   The

27 nondischargeable nature of the debt precludes the debtor from

28 benefitting from the nondischargeable conduct if a creditor assets

10

1   its rights.

2       The same principles apply in this case. Tammy Moniz and

3   Manuel Moniz diverted $352,887.22 to themselves when Moniz, Inc.

4   was clearly insolvent, out of business, and being sued by Van de

5   Pol Enterprises, Inc.    There is no dispute that Van de Pol

6   Enterprises, Inc.'s claim against Moniz, Inc. was $734,978.22 (this

7   does not include any post-petition interest that has accrued on the

8   obligation).    As events have transpired, Van de Pol Enterprises,

9   Inc. is the only beneficiary of the insolvent corporations trust

10  that has the right to assert its beneficial interest to recover the

11  $352,887.22 taken by Tammy Moniz and Manuel Moniz.    This represents

12  100 percent of the valid, enforceable beneficial interests in the

13  trust monies that can be recovered from Tammy Moniz and Manuel

14  Moniz.    The court rejects the debtors contention that Tammy Moniz

15  and Manuel Moniz have the right to retain $153,400.06 (43.47% of

16  $352,887.22) of the trust monies they improperly diverted to

17  themselves.

18              **Joint and Several Judgment For the Breach of**
                **Fiduciary Duty Damages**
19

20      Tammy Moniz and Manuel Moniz have further argued that the

21  court should not make them jointly and severally liable for the

22  $352,887.22 which they jointly authorized to be disbursed to the

23  two of them.    Rather, then contend that the liability should be

24  separate and limited to the amount disbursed to each of them

25  individually on the checks which they issued to themselves.    The

26  court rejects this contention. First, Tammy Moniz and Manuel Moniz

27  are married and no evidence was presented that any of the monies

28  disbursed were the separate assets of either person.    Family Code

11

1   § 760 expressly provides that assets acquired during a marriage are

2   community property and each member of the community, in this case

3   Tammy Moniz and Manuel Moniz.  The fact that Tammy Moniz and Manuel

4   Moniz, as the officers of Moniz, Inc. chose to structure the

5   transfers in checks issued to each of them does not defeat their

6   respective interests in the monies they diverted from the trust.

7       Second, Tammy Moniz and Manuel Moniz jointly determined to

8   authorize and make the payments to themselves.  Exhibit 10.  No

9   evidence was presented that Tammy Moniz and Manuel Moniz received

10  these community assets.  The testimony of Tammy Moniz that they

11  took $125,000.00 of these monies and paid down the mortgage on

12  their home, which they list as a joint asset on their Schedules

13  filed in the bankruptcy case.  Docket Entry No. 10, case no. 09-

14  90802.

15      Third, from the evidence presented, the court concludes that

16  Tammy Moniz and Manuel Moniz jointly structured the diversion of

17  the trust assets to the two of them.  The court does not find

18  plausible the contention that the payments to them are separate and

19  independent events.

20      The correct judgment in this case is for each Defendant to be

21  jointly and severally liable for the damages arising from the

22  breach of fiduciary duty by these two trustees.

23      These findings of fact and conclusions of law supplement those

24  made by the court on the record at the February 16, 2011 trial in

25  this adversary proceeding.

26  Dated: March  8 , 2011

27                          RONALD H. SARGIS, Judge
                            United States Bankruptcy Court

28

12

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

---

Kenneth Jorgensen
2440 W Shaw Ave #114
Fresno, CA 93711

Manuel Moniz
2128 Wimbledon Ct
Modesto, CA 95355

Tammi Moniz
2128 Wimbledon Ct
Modesto, CA 95355

Donald Stevenson
311 E Main St #302
Stockton, CA 95202-2904

Scott CoBen
1214 F St
Sacramento, CA 95814

Michael McGranahan
PO Box 5018
Modesto, CA 95352

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street , Room 7-500
Sacramento, CA 95814