

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**FILED**

**JUN 2 3 2011**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### MODESTO DIVISION

| | |
|---|---|
| In re | ) Case No. 09-90802-E-7 |
| MANUEL L. MONIZ and TAMMI S. MONIZ, | ) |
| Debtor(s). | ) |
| | ) |
| VAN DE POL ENTERPRISES, INC., | ) Adv. Pro. No. 09-9056 |
| Plaintiff(s), | ) Docket Control No. DMS-1 |
| v. | ) |
| MANUEL L. MONIZ and TAMMI S. MONIZ, | ) |
| Defendant(s). | ) |

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.

### MEMORANDUM DECISION AND ORDER

The court has been presented with a Motion seeking an award of attorneys' fees and costs as part of a nondischargeable judgment granted for Van De Pol Enterprises, Inc. ("Plaintiff") in this Adversary Proceeding. After trial, the court determined that the obligation of Manuel Moniz and Tammi Moniz ("Defendant-Debtors"), jointly and severally, to the Plaintiff in the amount of $352,887.25 was nondischargeable based on a breach of fiduciary

duty.    11 U.S.C. § 523(a)(4).    Upon announcing the court's ruling on the record and as set forth in the Supplemental Findings of Fact and Conclusions of Law, Dckt. 78, the court gave leave to the parties to file a motion for attorneys' fees, if they deeded it appropriate.    The Plaintiff filed the present Motion seeking $61,508.00 in attorneys' fees and $2,161.25 in costs.

## REVIEW OF MOTION AND ASSERTED BASIS FOR AWARD OF ATTORNEYS' FEES

Van de Pol Enterprises, the Plaintiff, filed a combined Motion and Memorandum of Points and Authorities in support of a request for attorneys' fees in this Adversary Proceeding.    This pleading is in violation of Local Rule 9014-1 and the Pleadings Guidelines for this District requiring the motion, memorandum, each declaration, and the exhibit documents to be separate pleadings.    The court waives the defect for this Motion.

Plaintiff bases its claim for attorneys fees on the contractual provisions of the Credit Agreement and Continuing Guarantee executed by the Defendant-Debtors and Moniz, Inc., their corporation.    The specific contractual provision relied upon by Plaintiff states,

> In the event of a breach of any of the terms of this agreement or any other agreement between [Plaintiff] and [Moniz, Inc.], [Moniz, Inc.] agrees to pay all attorney's fees and costs reasonably incurred by [Plaintiff], whether or not an action is filed.    The attorney's fees clause is limited strictly to contract actions.    It does not extend to tort actions.

Exhibit 1, Credit Application and Continuing Guarantee, pg 2, ¶ 4.

The continuing guaranty portion of the Credit Agreement and Continuing Guarantee further provides,

> Further Terms: The terms of the Creditor Agreement are incorporated into this Continuing Guarantee and apply to

2

1    me, including, but not limited to, the clauses concerning
     **ATTORNEYS FEES**, . . .
2

3    Exhibit 1, pg 2.  Emphasis in original.

4        In this Adversary Proceeding, the court has determined that
5    Plaintiffs are entitled to a judgment determining that $352,887.25
6    of the obligation personally guaranteed by the Defendant-Debtors is
7    nondischargeable based on  a breach of fiduciary duty, 11 U.S.C.
8    § 523(a)(4) as a beneficiary of the insolvent corporate trust of
9    Moniz, Inc.

10   <u>Summary of Claims in Complaint</u>

11       The Compliant filed by Van de Pol in this Adversary
12   Proceeding, Dckt. 1, asserts three specific claims for relief.  The
13   First Claim is for actual fraud, false pretenses, and false
14   representation, asserting that the damages arising thereunder were
15   non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  Under this
16   section a claim is nondischargeable if it is,

17       (a)(2)(A) false pretenses, a false representation or
         actual fraud, other than a statement respecting the
18       debtor's or an insider's financial condition;...

19   It is alleged in the Complaint that the Defendant-Debtors made
20   misrepresentations concerning the ability of Moniz, Inc. to pay for
21   fuel and petroleum products from Plaintiff.  It is asserted that
22   the misrepresentations were made for the purpose of obtaining
23   products from Plaintiff on credit, such products would then be sold
24   by Moniz, Inc., and upon receipt of the proceeds from the sale of
25   the products, the Defendant-Debtors intended to then divert the
26   proceeds to themselves rather than pay Plaintiff as promised.

27       The Second Claim asserts that the debt owed to Val de Pol is
28   nondischarageable pursuant to 11 U.S.C. § 523(a)(4).  This section

provides that a debt is not discharged if it is,

>    (a)(4) for fraud or defalcation while acting in a
>    fiduciary capacity, embezzlement, or larceny;....

The fiduciary relationship alleged arose upon the insolvency of Moniz, Inc, at which time the corporation held its assets in trust for creditors.  Plaintiff alleges that the Defendant-Debtors, as directors, breached their fiduciary duty by transferring assets of the insolvent corporation to themselves.

The Third Claim asserts that the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), which provides

>    (a)(6) for willful and malicious injury by the debtor to
>    another entity or to the property of another entity.

Plaintiff alleges that the Defendant-Debtors took possession of fuel and petroleum products on credit (through Moniz, Inc.) without the intention of paying for them.  This constituted an interference with Plaintiff's property, and therefore a willful and malicious injury.  It is further alleged that the fuel and petroleum products were "converted" by diverting to Defendant-Debtors the proceeds from selling the Moniz, Inc. purchased petroleum products.

**Summary of Trial**

At trial, the court determined that the Plaintiffs did not present sufficient evidence to prevail on the 11 U.S.C. § 523(a)(2)(A), fraud, and (a)(6), willful and malicious injury claims.  The court concluded that Plaintiff did prove its case for a breach of fiduciary duty, 11 U.S.C. 532(a)(4), and determined that the debt in the amount of $352,887.25 (of the Plaintiff's total claim for $707,569.15) was nondischargeable.

///

4

**Request for Attorneys' Fees**

Plaintiff requests the payment of attorneys' fees relating to the following proceedings in this court:

1.   <u>Moniz, Inc. Chapter 7 Case</u>.

It is asserted that the work for which fees are sought relate to time spent working and coordinating with counsel for the Chapter 7 Trustee in the corporation's bankruptcy case. The Motion/Memorandum states that there were a number of "novel" legal issues, including the corporate trust fund doctrine. The efforts included negotiating a settlement with the trustee. No further grounds are stated in the motion. The court does not rule on whether the fees may be included as part of the Plaintiff's claim in the bankruptcy case, even though they are not part of the Adversary Proceeding for breach of fiduciary duty.

2.   <u>Manuel and Tammi Moniz Chapter 7 Case, No. 09-90802</u>

These fees relate to the general work in asserting Plaintiff's claim and interests in this Chapter 7 case filed by the Defendant-Debtors. These fees do not relate to the nondischargeability action. These include some of the activities as referenced in connection with the Moniz, Inc. Chapter 7 case. The court does not rule on whether the fees may be included as part of the Plaintiff's claim in the bankruptcy case, even though they are not part of the Adversary Proceeding for breach of fiduciary duty.

3.   <u>*Van de Pol Enterprises v. Moniz Adversary Proceeding,*</u>
<u>*ADV No. 09-9050*</u>

In the instant Adversary Proceeding, Plaintiff alleges that this was a document heavy case with novel legal issues. Plaintiff asserts that at trial it was established that Moniz, Inc.

had been insolvent for more than a year before the corporation filed bankruptcy.

The Motion/Memorandum asserts that the court may grant attorneys' fees for litigating the issue of whether the debt on the Continuing Guarantee is nondischargeable. Citing to *Travelers Cas. & Sur. Co. Of America v. Pacific Gas & Electric*, 549 U.S. 443 (2007), Plaintiff states that though the Supreme Court directs the trial court to consider state law with respect to the scope of allowable attorneys' fees, it is not necessary in this case because the Defendant-Debtors agreed not to dispute Plaintiff's claim in their own bankruptcy case. Exhibit 8, Settlement Agreement in Moniz, Inc. Chapter 7 case. Plaintiff then directs the court to California Civil Code § 1717(a) for the proposition that in a contract action attorneys' fees shall be awarded to the prevailing party. It is further asserted that Plaintiff is the prevailing party as defined by Cal. Civ. § 1717(b).

The Defendant-Debtors counter that because the contractual attorneys' fees clause is expressly limited to "contract actions," then it cannot extend to the fraud, conversion, and breach of fiduciary nondischargeability claims. Under the American Rule, each party bears its own attorneys' fees unless otherwise provided by contract or statute. *Travelers, Id.*, p. 1203. Defendant-Debtors also contend that Plaintiff was not the prevailing party because the court found for the Defendant-Debtors on two out of the three causes of action. Further, pursuant to Fed. R. Bank. P. 7054(b) an award of attorneys' fees is discretionary. The opposition then attacks the claimed fees as excessive, providing an itemized analysis.

In response to the issue that the Adversary Proceeding sought relief based upon a tort claim, Plaintiff states that the proof of claim in the Defendant-Debtors' bankruptcy case was for a breach of contract, the Continuing Guarantee.    Though a substantial portion of the claim is being held nondischargeable due to a breach of fiduciary duty, the underlying obligation arises from a contract claim.    Plaintiff asserts that since the Defendant-Debtors failed to direct Moniz, Inc. to pay the trust funds to Plaintiff, they simultaneously committed a tort by breaching their fiduciary duty to the beneficiaries of the Insolvent Corporate Trust and breached a contractual obligation to Plaintiff.    In support of this proposition, Plaintiff cites to *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 840 (1999).

## DISCUSSION

Both parties are correct that the contractual right to attorneys' fees is determined under applicable nonbankruptcy law. In this case, there is a contractual provision for attorneys' fees. Fed. R. Bankr. P. 7008 requires that a claim for attorneys fees shall be pleaded as a claim in the Complaint.    The court's analysis begins with this requirement.    No separate cause of action for attorneys' fees is stated in the Complaint.    The only reference to attorneys' fees is in connection with the First Claim under 11 U.S.C. § 523(a)(2)(A), which states,

> 17.    As a result of Manuel Moniz and Tammi Moniz's misrepresentations, fraud, and failure and refusal to pay, there is now due, owning and unpaid to van De Pol the sum of $587,404.33 in principal, the amount gained by their intentional misrepresentations.    In addition, the invoices and the agreement with Moniz, Inc. provide for an award of reasonable attorneys' fees if a collection action is required and the payment of interest on delinquent amounts at the rate of 18% per annum. . .

7

18.   In addition, in pursuing litigation to recover the value of the fuel obtained by intentional misrepresentation and actual fraud, Van De Pol has expended at least $60,000.00 in attorney fees and legal costs. In pursuing this adversary proceeding, Van De Pol will incur additional attorney fees and costs to which it is entitled under the agreement of the parties.

Complaint, ¶¶ 17 and 18.   Dckt 1.   Attorneys' fees are not separately requested in connection with other causes of action stated in the Complaint.   The prayer in the Complaint makes a general request for attorneys' fees, requests that the court make a determination that the debt is nondischargeable, and requests that judgment be entered for $587,404.33 in principal and the accruing interest.   However, for the Second Cause of Action, Breach of Fiduciary Duty, the Plaintiff expressly incorporates the first eighteen paragraphs of the complaint, including paragraphs 17 and 18 which request the award of attorneys's fees for recovering the obligation owed by the Defendant-Debtors.   This is a sufficient request for attorneys' fees in the context of this Complaint.

**Right to Post-Petition Attorneys'**
**Fees as Part of Pre-Petition Claim**

In *Travelers*, the Supreme Court addressed the issue of when a creditor's post-petition legal fees could be included as part of its pre-petition claim.   PG&E objected to the post-petition legal fees being included in the claim because the fees related to litigating bankruptcy law issues.   In determining what is included as part of the pre-petition claim, the Supreme Court recognized its long-standing rule that in bankruptcy it is generally state law which governs the substance of claims.   *Travelers*, 549 U.S. at pg. 450.

The contract provision at issue expressly provides for

8

attorneys' fees, stating, "The attorney's fees clause is limited strictly to contract actions. It does not extend to tort actions." Trial Exhibit 1. This includes both a grant of and express restriction to the ability to recover attorneys' fees. Though initially broadly stated as all attorneys' fees and costs incurred by result of a breach, the Credit Application and Continuing Guarantee expressly limits the right to attorneys' fees "strictly to contract actions." This circumscribes the universe of fees which may be recovered. Though the agreement also continues to state that it does not extend to tort action, this partial list of exclusions does not work to expand the limiting language to only contract related attorneys' fees.

In this Adversary Proceeding, Plaintiff alleges that it was owed $587,404.33, plus interest, by Moniz, Inc. for fuel and petroleum products purchased by Moniz, Inc. Exhibit 1 introduced into evidence at trial is a Credit Application and Continuing Guarantee for Moniz, Inc. to purchase fuel and petroleum products from Plaintiff, which includes continuing personal guarantees by the Defendant-Debtors to pay these obligations of Moniz, Inc. However, the Complaint makes no express assertion that the Defendant-Debtors are liable to Plaintiff based upon a Continuing Guarantee. The proof of claim filed by Plaintiff in the Defendant-Debtors' bankruptcy case asserts an unsecured claim for $791,905.91 for goods sold. Case No. 09-90802, Proof of Claim No. 1 and Amended Proof of Claim No. 14 in the amount of $707,569.15. An accounts receivable aging report is attached to the Proof of Claim No. 1, but a Continuing Guarantee is not attached to either Proof of Claim No. 1 or Proof of Claim No. 2.

Though the Defendant-Debtors filed a *pro se* Answer which generally denied the allegations, including the underlying debt, they obtained counsel and were able to refine the issues by the time of the Pretrial Conference.  In the Defendant-Debtors Pretrial Statement, which sets the issues for trial, they stated:

1.    Defendant-Debtors do not dispute that a debt is owed to Plaintiff.

2.    Defendant-Debtors dispute the amount of debt that is owed to Plaintiff.

3.    Defendant-Debtors assert that the debt owed to Plaintiff was incurred in good faith.

4.    Defendant-Debtors assert that the Plaintiff ceasing to provide credit under the agreement and then enforcing the obligation by attaching the Moniz, Inc. bank accounts caused Moniz, Inc. to be unable to pay the debt.

5.    Defendant-Debtors deny that a fiduciary duty existed and that a breach occurred.

6.    No issues were abandoned.

7.    Discovery documents existed from pre-petition state court litigation.

Defendant-Debtors Pretrial Conference Statement, Dckt. 26.

The Plaintiff's Pretrial Conference Statement sets the following issues for the trial.

1.    A disputed issue is whether the Defendant-Debtors, as officers, directors, and 100% shareholders of Moniz, Inc. breached their fiduciary duty by diverting corporate funds to themselves, leaving creditors unpaid.

2.    The relief sought is to have the debt owed by the Defendant-Debtors determined to be nondischargeable.

3.    Whether the Defendant-Debtors are judicially estopped from disputing the amount owed Plaintiff because they stipulated not to object to Plaintiff's claim in their bankruptcy case.

From the Pretrial Conference Statements, the Defendant-Debtors had in play a dispute as to the amount of the obligation owed to

10

Plaintiff on the contract and whether Plaintiff had breached the contract by ceasing further loans to Moniz, Inc.  In addition, the Plaintiff had in play statutory issues as to whether grounds under 11 U.S.C. § 523(a) precluded the debt arising under the Credit Agreement and Continuing Guaranty from being discharged.

The scope of the issues addressed at trial are documented by the direct testimony statements prepared by the parties.  The court starts with a review of the Defendant-Debtors' Alternative Direct Testimony Statements.[1]   The first Alternative Direct Testimony Statement is provided by Tammy Moniz ("TM"), which provides testimony including,

1.  As of July 8, 2008, under the 30-day credit terms, $108,438.44 was due to Plaintiff by Moniz, Inc.  But for Plaintiff obtaining an attachment on the Moniz, Inc. bank accounts, the $108,438.44 would have been paid by Moniz, Inc.  TM, ¶6.[2]

2.  Plaintiff abruptly halted fuel sales on credit to Moniz, Inc. without warning.  TM, ¶5.

3.  Moniz, Inc. did not receive any communication from Plaintiff that the credit line was being cancelled.  TM, ¶7.

The second Alternative Direct Testimony Statement is that of Manuel Moniz ("MM").  Though Manuel Moniz chose not to testify at trial and his Alternative Direct Testimony Statement was not

_____

[1]/ Alternative Direct Testimony Statements are utilized pursuant to Local Bankruptcy Rule 9017-1 as a method for the parties to clearly organize and prepare their case in advance of trial, including  insuring that foundational testimony is clearly provided for exhibits and testimony.  This dramatically reduces trial time, and more importantly allows the witnesses to have focused on their testimony prior to being placed in the witness box and be prepared for the often unfamiliar rigors of a trial.

[2]/ The Tammi Moniz Alternative Direct Testimony Statement is referenced as "TM."

introduced as evidence, it demonstrates the issues as framed by the Defendant-Debtors the day of trial.

1. Plaintiff abruptly ceased selling fuel on credit to Moniz, Inc. on July 8, 2008. MM, ¶5.

2. Moniz, Inc. would have paid the $108,438.44 due Plaintiff on the 30-day credit terms if Plaintiff had not obtained an attachment on the Moniz, Inc. bank accounts. MM, ¶6.

3. Moniz, Inc. did not receive any notice that Plaintiff was cancelling the credit agreement. MM, ¶7.

The Defendant-Debtors filed a Trial Brief, Dckt. 47. One of the defenses raised is that of unclean hands. The improper conduct alleged to have been perpetrated by the Plaintiff is (1) allowing Moniz, Inc. to exceed the credit limits under the credit agreement and (2) cutting off credit under the credit agreement. It is alleged that the intention behind this conduct was to steal Moniz, Inc. customers. Though somewhat obliquely pled, the Defendant-Debtors disputed the amount owed under the contract. While admitting that "a debt" was owed, the Defendant-Debtors unequivocally disputed the amount of such unstated debt. One of their arguments was that no debt was owed on the contract due to the credit facility being terminated. These issues are part of an "action on the contract," and not an independent tort.

The Plaintiff provided several Alternative Direct Testimony Statements addressing the matters it believed to be at issue in this case. Most of the Alternative Direct Testimony Statement submitted by Ron Van De Pol addresses alleged misrepresentations made by the Defendant-Debtors. Mr. Van De Pol provides brief testimony about the Plaintiff providing credit and the decision to terminate further credit.

The second Alternative Direct Testimony Statement provided by

Plaintiff is that of Scott MacEwan.  This testimony focuses on a financial analysis of Moniz, Inc. and when the corporation became insolvent.  Mr. MacEwan also testified as to the conduct of the Defendant-Debtors, as shown from the books and records of Moniz, Inc. in disbursing monies to themselves prior to and during the period when Moniz, Inc. was determined to be insolvent.  A small portion of Mr. MacEwan's testimony authenticates Plaintiff's records documenting the obligation owed by Moniz, Inc. and the Defendant-Debtors and the current balance due.

Plaintiff's trial brief mirrors the Alternative Direct Testimony Statements filed in support of its case in this Adversary Proceeding.  The legal and factual issues argued focus on the alleged fraud, nondischargeable grounds, and insolvency of Moniz, Inc.  Little, if any, arguments and authorities relate to the obligation owing for the breach of the Credit Application and Continuing Guarantee.  The direct testimony statements by all witnesses is consistent with and reflective of the testimony they provided at trial.

**Only the Attorneys' Fees Relating to the Contract Action May be Awarded in this Adversary Proceeding**

In this case the legal fees which Plaintiff seeks relate a determination of the statutory grounds under 11 U.S.C. § 523 for nondischargeability of the undisputed claim of Plaintiff.  The contractual provision expressly states that it is "limited strictly to contract actions."  With one exception, not applicable here,[3]

---

[3]/ 11 U.S.C. § 523(d) provides that if a creditor requests determination of nondischargeability of a consumer debt under subsection (a)(2) and the debt is discharged, the consumer debtor may recover reasonable attorneys' fees if the court determines

the Bankruptcy Code does not create a statutory basis for the
prevailing party to recover attorneys' fees for an action brought
under 11 U.S.C. § 523.  The contractual provision does not include
broad language to include statutory claims or any and all other
actions as necessary to enforce the obligations owing to Plaintiff.

Though Plaintiff argues that significant contractual issues
were involved in this action, modest contractual issues were argued
in connection with this Adversary Proceeding.  The significant
issues related to whether Plaintiff could prove one or more of the
statutory grounds for nondischargeabilty of the undisputed debt.
The Ninth Circuit addressed this issue in *American Express v.
Hashemi*, 104 F.3d 1122 (9th Cir. 1996), *cert.* denied 520 U.S. 1230
(1997), in connection with American Express obtaining a judgment
that the credit card debt was nondischargeable.  In that case,
American Express argued that it was entitled to attorneys' fees
under the provision of its contract allowing for such fees in
enforcing its rights under the contract.  The Ninth Circuit
rejected this argument, concluding,

> Because the bankruptcy court did not need to 'determine
> the enforceability of the . . . agreement to determine
> dischargeability,' [internal citation omitted], American
> Express' dischargeability claim is not an action on the
> contract.  American Express is therefore not entitled to
> fees incurred pursuing this part of its claim.  *See Grove
> v. Fulwiler (In re Fulwiler)*, 624 F.2d 908, 910 (9th Cir.
> 1980).

*American Express v. Hashemi*, 104 F.3d at 1126-27.  In the *Travelers*
decision, the Supreme Court recognized that the right to recover
attorneys' fees is based on the state law interpretation of the

_____

that the position of the creditor was not substantially
justified.

contract and not any *per se* "*Fobian* bar on attorneys' fees" merely because the issues before the court arise under the Bankruptcy Code.  *Travelers*, 549 U.S. at 452.[4]

The court also rejects the Defendant-Debtors' contention that there were no contract issues at play in this litigation.  The Defendant-Debtors directly called into question the amount of the debt.  Merely agreeing that "a debt" is owing, but disputing the amount of the unstated debt does not free the Defendant-Debtors from the contractual attorneys' fees obligation.

The contract at issue provides for attorneys' fees only for "[a] breach of any of the terms of this agreement or any other agreement between [Plaintiff] and [Defendant-Debtors] ....," whether or not an action is filed.  It further provides that the right to attorneys' fees is limited strictly to "contract actions."  The parties have not defined that term in their agreement.  In applying the provisions of Cal. Civ. Code § 1717, the court in *Gil v. Mansano*, 121 Cal. App. 4th 739, 743 considered the distinction between a claim stated "on a contract" and on a tort:

> Broad language in a contractual attorney fee provision may support a broader interpretation. (*Exxess Electronixx v. Heger Realty Corp.*, *supra*, 64 Cal. App. 4th at p. 712.) Thus, for example, an attorney fee provision applicable to "any dispute under the agreement" is sufficiently broad to include the assertion of a contractual defense to fraud and breach of fiduciary duty causes of action. (*Thompson v. Miller*, *supra*, 112

[4]/ *In re Fobian*, 951 F.2d 1149 (9th Cir. 1991), stated a very narrow rule, not allowing attorneys' fees if the issues arose under bankruptcy law, such as a creditor asserting its rights in a confirmation fight, but only on the basic contract issues.  In *Travelers*, the Supreme Court clarified that a contractual right to recover attorneys' fees is governed by the contractual language.  The parties may well contract to allow for the recovery of attorneys's fee for bankruptcy and other non-basic contract issues.

1     Cal.App.4th at pp. 335-337.) Such an attorney fee
2     provision is not limited to an action brought to enforce
      the agreement. Other broad language has also been
3     interpreted broadly to include tort actions. (*Santisas v.*
      *Goodin*, *supra*, 17 Cal.4th at p. 607 ["arising out of the
4     execution of the agreement"]; *Allstate Ins. Co. v. Loo*
      (1996) 46 Cal.App.4th 1794, 1799 [54 Cal. Rptr. 2d 541]
5     ["'relating to the demised premises' "]; *Moallem v.*
      *Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th
6     1827, 1831 [31 Cal. Rptr. 2d 253] ["'relating to' the
      contract"]; *Xuereb v. Marcus & Millichap, Inc.* (1992) 3
7     Cal.App.4th 1338, 1342 [5 Cal. Rptr. 2d 154] ["to which
      'this Agreement gives rise' "].)

8  *Gil v. Mansano*, 121 Cal. App. 4th at 744.    *Moallem v. Coldwell*

9  *Banker Com. Group, Inc.*, 35 Cal. App. 4th 1827, 1831 (1994),

10  addressed a contractual attorneys' fees provision for any legal

11  action against the other party relating to the agreement.    Such

12  language was determined broad enough to include attorneys' fees for

13  tort claims relating to the contract.

14       The contractual attorneys' fees provision in the Credit

15  Application and Continuing Guarantee is more narrowly drawn,

16  limited only to "contract actions," and not a more broadly drafted

17  contractual provision such as for "any damages arising from or

18  relating to a breach of the agreement."    Though broad in its first

19  sentence, any "breach," which may have included statutory and tort

20  claims, the parties expressly qualified this contractual right.

21  The court respects and gives weight to the choice of language that

22  the attorneys' fees be "limited strictly" to contract actions.[5]  By

23  including the clarifying general exception that the attorneys' fees

24  provision does not extend to tort actions, the parties reaffirm

25  _____

26       [5]/ No evidence was presented at the hearing concerning the
     construction of this language and the intention of the parties.
27  The court can envision a skillful contracts attorney properly
     choosing this language to protect Plaintiff from what it would
28  consider specious tort or statutory claims, and limit any
     disputes only to the scope of contractual damages.

that the provision is to be strictly construed and limited only to attorneys fees relating to enforcing rights under the contract. Therefore, the court concludes that the attorneys' fees provision does not include enforcing statutory rights, such as seeking a determination that the debt is nondischargeable under 11 U.S.C. § 523(a)(4). Under the "American Rule" for attorneys' fees, the prevailing litigant is not entitled to recover attorneys' fees except as provided by statute or contract. *Travelers*, 549 U.S. at 1203.

**Scope of Work for Attorneys' Fees Requested**

As part of the judgment for nondischargeablity, Plaintiff requested that the court enter a monetary judgment for the damages arising from the breach of the Credit Application and Continuing Guarantee Agreement. The Defendant-Debtors contested the amount of the debt owing for the breach of this contract. Though modest in comparison to the nondischargeability issues, the attorneys' fees in relation to the breach of contract damages fall within the attorneys' fees provision of the Credit Application and Continuing Guarantee.

The attorneys' fees requested consist of three main parts. The first are the general attorneys' fees incurred relating to the breach of the Agreement which constitute part of Plaintiff's claim in the Moniz, Inc. and the Tammi and Manuel Moniz cases. These fees include those incurred in addressing the Plaintiff's contract action claim in the Moniz, Inc. bankruptcy case and addressing issues with the Chapter 7 Trustee in that case. The second set of contract action attorneys' fees and costs were incurred in connection with the Defendant-Debtors' Chapter 7 case, which are

not part of the instant litigation.   While part of Plaintiff's claim in the Debtor-Defendant's Chapter 7 case, they are not fees subject to be awarded for this litigation.

The third set of fees relate to those incurred in connection with this Adversary Proceeding.   To the extent that the attorneys' fees relate to the enforcement of Plaintiff's statutory rights under 11 U.S.C. § 523(a), they are outside the scope of the attorney's fees provision which is "limited strictly to contract actions."   As addressed earlier in this decision, a modest portion of the fees relate to the breach of contract issues, and the vast majority relate to determining a legal theory, advancing that theory, and proceeding to trial on statutory nondischargeability grounds.   The former, the breach of contract related fees, may be considered for an award in this Adversary Proceeding.   The latter, statutory claims, are outside of the "contract action" limitation of the attorneys' fees provision in the Credit Application and Continuing Guarantee.

The court has reviewed the billing records introduced by Plaintiff in support of this application.   No analysis of the time expended has been provided, leaving the court with merely a pile of paper to sift through and determine what fees are part of this adversary proceeding and which are part of Plaintiff's general unsecured claims in the Moniz, Inc. And the Defendant-Debtors' bankruptcy cases.   Complicating this process is that the billing records do not clearly delineate the fees relating to the "action on the contract" and the statutory issues.   It is the Plaintiff's burden to provide the court with evidence in support of the relief requested.

For the legal fees relating to this adversary proceeding and theories of fraud, breach of fiduciary duty, and willful and malicious injury, the court has identified the following amounts which are being claimed by the Plaintiff that relate to litigation with the Defendant-Debtors.

| | | | |
|---|---|---|---|
| 1. | Research (prior to and during the Adversary Proceeding) and Preparation of the Complaint: | $10,063.00 | 38.7 hrs |
| 2. | Discovery: | $ 6,734.00 | 25.9 hrs |
| 3. | Adversary Proceeding Administrative Activities and Conferences: | $ 3,198.00 | 12.3 hrs |
| 4. | Bankruptcy Dispute Resolution Program (Mediation): (From the records, this appears to have been conducted in connection with the litigation commenced in the Moniz, Inc. bankruptcy case.) | $ 5,382.00 | 20.7 hrs |
| 5. | Communications: | $     572.00 | 2.2 hrs |
| 6. | Trial Preparation:[6] | $14,508.00 | 55.8 hrs |
| 7. | Trial: | $ 2,106.00<br>$42,562.00 | 8.1 hrs<br>163.7 hrs |

As the Trial Transcript will demonstrate, the oral testimony by the parties, witnesses, and cross examination was overwhelmingly directed to the issues of insolvency of Moniz, Inc. and the conduct of the Defendant-Debtors which were alleged to constitute the statutory nondischargeability grounds.

The court finds that the hourly rate of $260.00 for

---

[6]/ In considering "trial preparation" time, it must be remembered that this includes preparing the party's Alternative Direct Testimony Statements and reviewing the opposing party's Alternative Direct Testimony Statements.  This reduced what could have been a three day trial to one day.

19

Plaintiff's counsel is reasonable in light of the issues presented at trial and the experience of counsel. The court determines that 16 hours of the legal services provided related to the "contract action." The court awards $4,160.00 in attorneys' fees in this Adversary Proceeding to Plaintiff.

Though the court has determined that only the contract action portion of the fees are recoverable, given that the review of the attorneys' fee issue is fresh in the mind of the court, the court will also determine the amount of attorneys' fees relating to the nondischargeability theory on which the Plaintiff actually prevailed.[7] Again, because the services are lumped together and not identifiable by theory on the billing records, the court has to make this determination based on the issues set forth in the Complaint, Answer, Pretrial Conference Statements, Trial Briefs, and presentation of evidence and arguments at trial.

A significant portion of the testimony related to how the court should determine when Moniz, Inc. was insolvent. Though the court did not determine that Moniz, Inc. was insolvent as early as advanced by the Plaintiff, the court found unpersuasive the testimony offered by the Defendant-Debtors that Moniz, Inc. was solvent during all relevant periods. This was necessary to determine when the Defendant-Debtors' fiduciary duty arose and when the breaches of that fiduciary duty occurred. Additionally, this required testimony and the preparation of evidence as to what

---

[7]/ To the extent that either or both parties elect to proceed with an appeal and if the trial court is not correct in interpreting the contractual attorneys' fees provision, determining the fees which relate to the breach of fiduciary duty nondischargeability grounds will be much easier and more accurate this close to trial.

transfers the Defendant-Debtors received when Moniz, Inc. was insolvent. The court determines that the attorneys fees relating to the breach of fiduciary duty/insolvency nondischargeability issue are $15,600.00. This represents 60 hours of attorneys' fees at $260.00 per hour. These fees are not part of the "contract action" attorneys' fees.

The remaining $22,802.00 in legal fees are spread over two different nondischargeable theories, on which the Plaintiff did not prevail in the action. Though Plaintiff is the ultimate prevailing party in this action on the breach of fiduciary duty theory, it does not mean that it is entitled to recover attorneys' fees for failed theories.

The request for attorneys' fees is granted, in the amount of $4,160.00, with the balance of the requested fees not awarded in this nondischargeablity action. This is without prejudice of the rights, if any, of Plaintiff to include attorneys' fees as part of its claims in the two Chapter 7 cases.

**Requested Costs**

The Plaintiff requests $2,161.25 in costs as the prevailing party in this Adversary Proceeding. Fed. R. Bankr. P. 7054 provides that the court may allow costs to the prevailing party. The costs requested by Plaintiff are:

| | | |
|---|---|---|
| 1. | Filing Fee: | $250.00 |
| 2. | Copies ($0.15 per page): | $311.70 |
| 3. | Copies of Bank Records (From Defendant-Debtors' Counsel) | $200.00 |
| 4. | Deposition Transcript: | $489.70 |
| 5. | Postage, Trial Statements and Exhibits: | $ 61.55 |

21

| 6. | Exhibit Binders: | $ 57.55 |
|----|------------------|---------|
|    | ($11.51 each) |  |

| 7. | Court Call: | $ 90.00 |
|----|-------------|---------|
|    | (Telephonic Appearances) |  |

| 8. | Trial Transcript: | $700.75 |
|----|-------------------|---------|

Costs pursuant to Fed. R. Bankr. Proc. 7054 and Fed. R. Civ. P. 54 are those as set forth in 28 U.S.C. § 1920.

A judge or clerk of any court of the United States may tax as costs the following:

(1)     Fees of the clerk and marshal;

(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)     Fees and disbursements for printing and witnesses;

(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees under section 1923 of this title;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Plaintiff is allowed its costs for the filing fee, copies, copies of bank records, deposition transcripts, postage for trial statements and exhibits, and exhibit binders, which totals $1,370.50. The court denies the request for telephonic appearance expenses and the trial transcript.

The judgment shall include an award to Plaintiff of $4,160.00 for attorneys' fees and $1,3570.50 for allowed costs in this Adversary Proceeding. This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law

///

///

pursuant to Fed. R. Civ. P. 52 and Fed. R. Bank. P. 7052 and 9014.

The court shall issue a separate order consistent with this ruling.

Dated: June 23 , 2011

Ronald H. Sargis, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

Kenneth Jorgensen
2440 W Shaw Ave #114
Fresno, CA 93711

Donald Stevenson
311 E Main St #302
Stockton, CA 95202-2904

Scott CoBen
1214 F St
Sacramento, CA 95814

Manuel Moniz
2128 Wimbledon Ct
Modesto, CA 95355

Tammi Moniz
2128 Wimbledon Ct
Modesto, CA 95355

Michael McGranahan
PO Box 5018
Modesto, CA 95352

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street , Room 7-500
Sacramento, CA 95814